UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

OTIS ARNOLD, #R-47854,
    Plaintiff,

v.      07-1178

JOSEPH D. WILLIAMS,
    Defendant.

MEMORANDUM OPINION AND ORDER

    Before the court is the Defendant, Joseph Williams's unopposed summary judgment motion [67].

Background

    Plaintiff brings this action pursuant to 42 U.S.C. §1983 for alleged violations of his Eighth Amendment rights while he was at Pontiac Correctional Center. Specifically, Plaintiff alleges that Defendant heard Inmate Charles Johnson threaten him on October 16, 2007, and that later that day, Defendant escorted Inmate Johnson to a holding cell, where Plaintiff and several other inmates were waiting to see the dentist. Plaintiff alleges that when Defendant opened the cell door, Defendant allowed Inmate Johnson to kick Plaintiff in the head. He further alleges that Defendant refused to get him medical care for his alleged injuries afterward.

Material Facts Claim to be Undisputed

1. At all times relevant to this lawsuit, Plaintiff was incarcerated at Pontiac Correctional Center ("Pontiac"). (Complaint.)
2. At all times relevant to this lawsuit, Defendant was employed as a correctional officer at Pontiac. (Affidavit of Joseph Williams, attached hereto as Ex. B, para. 1.)
3. At all times relevant to this lawsuit, Defendant acted under color of state law. (Complaint.)
4. On October 16, 2007, Defendant was assigned to 8 gallery on the 3-11 shift. (Ex. A, p. 9; Ex. B, para. 4.)
5. On October 16, 2007, Plaintiff was assigned to 6 gallery, which is directly below 8 gallery, in cell 648. (Ex. A, p. 17.)
6. Although Plaintiff alleges he did not get along with Inmate Charles Johnson, Plaintiff never complained to anyone about Inmate Johnson. (Ex. A, p. 13.)
7. Although Plaintiff alleges that Inmate Johnson told him he was going to "kick you (Plaintiff) in your shit," and that Plaintiff responded by saying "you're not going to touch

    me," while Defendant Williams was on the wing, Defendant Williams heard no such

1

   threat. (Ex. A, p. 20-1; Ex. B, para. 11-2)
8. Defendant did not hear any inmate threaten Plaintiff. (Ex. B, para. 12.)
9. Plaintiff has no evidence to the contrary. He merely surmises that Defendant "must have heard" the alleged threat because he told both inmates to be quiet. (Ex. A, p. 21.)
10. It is common for inmates to talk to inmates in other cells and on other galleries, which makes noise levels in the cell house very loud. Consequently, it is difficult to hear what any specific offender is saying. (Ex. B, para. 11.)
11. Because yelling is a violation of prison rules and can create security problems, it is common for gallery officers to have to tell inmates to be quiet or risk disciplinary action. (Ex. B, para. 11.)
12. Had Defendant heard Inmate Johnson threaten Plaintiff, he would have notified the sergeant or lieutenant in charge of the cell house of the threat, he would have written an incident report concerning the threat, and he never would have allowed Inmate Johnson in a cell with Plaintiff. (Ex. B, para. 13.)
13. Later that day, Plaintiff was handcuffed and escorted to the holding cell by Officer Bennett to be seen by the dentist. (Ex. A, p. 14, 26.)
14. While being escorted at Pontiac, offenders are handcuffed behind their backs, and the cuffs are attached to a D-ring, which allows the escorting officer to maintain hold of the inmate. When the door to the holding cell is opened, the offender and the officer enter, and the officer attaches the offender's cuffs to the bench by a chain and a lock. (Ex. B, para. 6.)
15. Around 5:45 p.m. on October 16, 2007, Defendant escorted Inmate Charles Johnson to the dental holding cell. (Complaint; Ex. A, p. 29; Ex. B, para. 5.)
16. When Defendant opened the door to the holding cell, Inmate Johnson leaned forward without warning and kicked Plaintiff once in the side of the head. (Complaint; Ex. A, p. 29-30, 33-4; Ex. B, para. 7.)
17. Plaintiff was busy talking to the inmate seated to his right, so he did not see how Inmate Johnson was able to kick him. (Ex. A, p. 33.)
18. Defendant immediately pulled Inmate Johnson out of the holding cell and took him to see CMT Beasley, leaving one of the officers outside the holding cage to tend to Plaintiff, per Department protocol. (Ex. A, p. 37; Ex. B, para. 8.)
19. Although Plaintiff claims he sustained a "little gash above" his eye and that he did not receive any medical attention for 24 hours, CMT Beasley saw Plaintiff a few minutes after he was kicked. (Ex. A, p. 39; Affidavit of Christine Beasley, para. 3-4, attached hereto as Ex. C.)
20. Plaintiff told CMT Beasley that he was fine and that he did not need anything, and CMT Beasley noted that Plaintiff had no marks or redness where he had been kicked. (Ex. C, para. 4.)
21. Plaintiff was then placed back in his cell, #648. (Ex. B, para. 9.)
22. The following day, Plaintiff complained to CMT Richard Cation of a headache and tenderness in his left temple area. CMT's Cation's entry indicates there was no redness, edema or bruising. (Affidavit of Richard Cation, para. 3, attached hereto as Ex. D.)
23. Plaintiff's medical records do not indicate that Plaintiff was ever diagnosed with an injury related to the kick or that he ever complained again to medical staff about any

related injury.  (Plaintiff's Medical Records, attached hereto as Ex. E.)

Discussion and Conclusion

A. Failure to Protect

Prison officials can be held liable under the Eighth Amendment for failing to protect inmates from excessive risk to their safety.  The official must be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists and he must draw the inference.  *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979 91994).  An official's failure to alleviate a significant risk that he should have perceived but did not is not a basis for liability under the Eighth Amendment. Farmer, 511 U.S. at 838, 114 S. Ct. at 1979.  The test is whether the employee knew the inmate faced a serious danger to his safety and could have easily averted the danger, yet failed to do so.  *Case v. Ahitow*, 301 F.3d 605, 607 (2002).  Further, a plaintiff in a suit brought pursuant to 42 U.S.C. 1983 can not recover for de minimus injuries.  *Tesch v. County of Green Lake*, 157 F.3d 465, 476 (7th Cir. 1998).  An inmate must demonstrate a physical injury before he may seek damages for mental or emotional injuries.  42 U.S.C. 1997e(e).  A de minimus physical injury does not satisfy the requirements of 42 U.S.C. 1997e(e).  *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); *Rahim v. Sheahan*, 2001 U.S. Dist. LEXIS 17214 at *28 (N.D. Ill. October 18, 2001).

B. Deliberate Indifference

The Eighth Amendment does not guarantee inmates a right to "unqualified access to healthcare," but rather only "adequate medical care."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Boyce v. Moore*, 314 F.3d 884, 888 (7th Cir. 2002).  Deliberate indifference to a serious medical need of an inmate violates that inmate's Eighth Amendment rights only when it amounts to unnecessary and wanton infliction of pain.  *Estelle v. Gamble*, 97 S. Ct. 285, 291, 429 U.S. 97, 104 (1976).  Plaintiff must first establish the he had a serious medical need, which the Seventh Circuit has defined as one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.  *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997).

If he establishes that he had a serious medical need, plaintiff must then prove that defendant was deliberately indifferent to that need. He must establish that defendant was both aware of the fact from which the inference could be drawn that a substantial risk of serious harm exists, and he must actually draw that inference.  *Farmer v. Brennan*, 511 U.S. at 837.  This requires actual knowledge of impending harm that is easily preventable, so that a conscious, capable refusal to prevent harm can be inferred from Defendants' failure to prevent it.  *Dixon v. Godinez* 114 F.3d 640, 645 (7th Cir. 1997); *Duckworth th v. Franzen*, 780 F.2d 645, 653 (7th Cir. 1985.)

C.  Qualified Immunity

Government officials performing discretionary functions generally are shielded from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 102 S. Ct. 2727, 2738, 457 U.S. 817, 818 (1982). To determine if an official is entitled to qualified immunity, a two part inquiry is required: (1) whether a constitutional right would have been violated on the facts alleged, and (2) whether the right alleged to have been violated was clearly established. *Saucier v. Katz*, 533 U.S. 194, 200, 121 S. Ct. 2151, 2155 (2001). The second prong must be undertaken in light of the specific context of the case, not as a broad general proposition. *Id*. at U.S. 201, S. Ct. 2156. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted. *Id*. at U.S. 202, S. Ct. 2156. An official who makes a reasonable mistake as to what the law requires is entitled to the defense of qualified immunity. *Id*. at U.S. 205, S. Ct. 2158.

The court finds that Defendant was not deliberate indifferent to Plaintiff's safety. Defendant does not dispute that Plaintiff was kicked once in the side of the head by Inmate Charles Johnson, who was being escorted by Defendant. However, Defendant had no knowledge that Inmate Johnson posed a danger to Plaintiff. Inmate Johnson simply leaned forward and kicked Plaintiff without warning when Defendant tried to place him in the holding cell. Plaintiff has no information to the contrary because he did not see how Inmate Johnson was able to kick him.

Plaintiff alleges that Defendant should have known that Inmate Johnson would hurt him because Defendant heard Inmate Johnson holler to Plaintiff from another gallery that he was going to "kick you in your shit" earlier in the day. He also alleges that Defendant "must have heard" the alleged threat because he told the inmates to quiet down. However, cell houses are very noisy places, and it is very hard to hear what individual inmates are saying. Consequently, even if Inmate Johnson had made such a threat, Defendant did not hear it. Further, even if Plaintiff could establish that Defendant told inmates to be quiet, that does not establish that Defendant heard the threat. It merely establishes that he had to tell inmates to quiet down because their noise levels were too high and caused potential security problems. Without evidence that Defendant knew that Inmate Johnson posed a significant threat to Plaintiff's safety, Plaintiff has not established that Defendant was deliberately indifferent to his safety. Consequently, Defendant is entitled to summary judgment on this issue.

Further, although Plaintiff alleges he sustained a "little gash above" his eye, his medical records establish that he suffered no injuries from the kick. Plaintiff was seen by CMT Beasley within minutes of being kicked, and he told CMT Beasley he was fine and did not need any assistance. Additionally, Plaintiff did not have any marks or redness where he was kicked. Consequently, if Plaintiff sustained any injury from the kick, it was de minimus at best, and he cannot recover for de minimus injuries.

Plaintiff alleges that Defendant was deliberately indifferent to his serious medical needs because he refused to get him medical attention for injuries he claims to have suffered from

the kick. However, because Defendant was escorting Inmate Johnson, his job was to remove Inmate Johnson from the cell after the kick, while other officers outside the cell checked on Plaintiff. Moreover, the evidence shows that Plaintiff refused medical attention when he was seen by CMT Beasley within minutes of being kicked. Additionally, the evidence establishes that neither CMT Beasley nor CMT Cation, who saw Plaintiff the following day, noticed any injuries or marks where Plaintiff was kicked. Further, his medical records establish that Plaintiff was never diagnosed with any injury related to the kick, and that he never complained to the medical staff again about any related injury. Consequently, Defendant is entitled to summary judgment on this issue also.

In order to overcome Defendant's qualified immunity defense, Plaintiff would have to show that a prison guard can be held liable for failing to protect an inmate from a threat to his safety that the guard does not know exists or for non-existent or de minimus injuries. He would also have to show that a prison guard can be held liable for failing to obtain medical care for an inmate when that inmate is seen by a CMT within minutes of an alleged injury. Plaintiff cannot establish this, and therefore, this Defendant is entitled to qualified immunity.

**Plaintiff was not forthcoming regarding his claim of deliberate indifference to his serious medical needs. In fact he outright lied. The court finds that this claim was frivolous. Filing this claim wasted the court's resources, as well as those of the Illinois Attorney General and the Illinois Department of Corrections' staff, including Defendant and the medical staff who provided an affidavit to support Defendant's summary judgment motion. 730 ILCS 5/3-6-3(d) provides that "If a lawsuit is filed by a prisoner in an Illinois or federal court against the State, the Department of Corrections, or the Prisoner Review Board, or against any of their officers or employees, and the court makes a specific finding that a pleading, motion, or other paper filed by the prisoner is frivolous, the Department of Corrections shall conduct a hearing to revoke up to 180 days of good conduct credit by bringing charges against the prisoner sought to be deprived of the good conduct credits before the Prisoner Review Board as provided in subparagraph (a)(8) of Section 3-3-2 of this Code. If the prisoner has not accumulated 180 days of good conduct credit at the time of the finding, then the Prisoner Review Board may revoke all good conduct credit accumulated by the prisoner.**

It is therefore ordered:

1. Defendants' motion for summary judgment [67] allowed. The clerk of the court is directed to enter judgment in favor of the defendant and against the plaintiff pursuant to Fed. R. Civ. P. 56. The case is terminated. The parties are to bear their own costs.
2. Heidi Hildegrand, Assistant Illinois Attorney General, is directed to bring this cases to the attention of the appropriate person with the Illinois Department of Corrections for consideration of the plaintiff's frivolous claim. See 730 ILCS 5/3-6-3(d).
3. If the plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present

on appeal.  *See* Fed. R. App. P. 24(a)(1)(C).  If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate a strike under 28 U.S.C. 1915(g).

Enter this 7th day of July 2010.

**\s\Harold A. Baker**

_____
Harold A. Baker
United States District Judge